Good morning, Your Honors. David Landry on behalf of the petitioner, Mr. Leppind. Your Honors, before I speak to the merits of the appeal, I'd like to address the Court's order of May 2nd instructing both parties to review the Bonavie-Gonzalez case and how it applies to our situation here. In the removal proceedings, the petitioner was charged with two bases for inadmissibility. One, that he lacked entry documents, and that was conceded. The other was a claim that he had made a false claim to U.S. citizenship, and that was contested. The immigration judge, in his decision, made a negative credibility finding, and on the basis of that negative credibility finding, he found that the petitioner had, in fact, made a false claim to citizenship. He also used a negative credibility finding to deny the petitioner his claim to asylum. And the Board, on the other hand, reversed the immigration judge's negative credibility finding. And at the end of its one-page order, it says that they affirmed the judge's denial of asylum. They note that the petitioner, in this case, contended that the immigration judge erred in finding him removable, having made a false claim to citizenship. And then they state, we affirm the immigration judge's finding that the respondent failed to meet his burden of establishing that he's admissible to the United States. The reason I bring this up is that the Board's decision really isn't clear as to which basis for inadmissibility the Board was sustaining. In other words, there were two of them. They note that the petitioner had made the argument before that court that the false claim was an issue, but they never actually clearly addressed it in their decision. The reason I bring this up is that if it is, as the Board has stated, that the petitioner was truthful in his statements, then it is also true that he did not make a false claim to citizenship. And if that is true, then the case really should be remanded to either the Board or the immigration judge. Of course, the petitioner would prefer the immigration judge because the petitioner would assert that the Board has already spoken to that issue. Can't we remand directly to the I.J.? No, Your Honor. We would have to remand to the I.A. It would have to be through the Board. That's right, Your Honor. But also, Bono is an intervening decision. And how would that affect the case? Well, at the time, Your Honor, that the petitioner was going through removal proceedings was many years before Bono came down. And at the time the petitioner was in the removal proceedings, he had a pending or, in fact, I believe, actually was approved I-130 petition for alien relative through his U.S. citizen spouse. So he was able to be admitted at that time. And if Bono were in effect and the parties all realized that he would have been able to immigrate, that would have been an issue that would have come up in those proceedings. Was I-130 approved at that time? I'm not sure that it actually was approved at that time. I know that it is approved as of now. And the point here is that if it is that the Board is correct and that the petitioner was truthful in these statements, then arguably that does reverse the judge's decision for inadmissibility based simply on or solely on the false claim to citizenship. And if so, it should be remanded to the immigration judge or through the Board to the immigration judge so the petitioner would have an opportunity to immigrate through his U.S. citizen spouse. I've spoken to Mr. Rabin, government counsel, regarding this matter. And, of course, he may not share the same opinion, but he did indicate that if the court were so inclined, we would both agree to mediation regarding this matter to see if we can't resolve this issue. Because if it is, if this is true, then there's no real reason to go forward on the asylum claim because the petitioner will be able to immigrate and it will become a moot point. So are you asking that we order to unite circuit mediation and defer submission of this case? Yes. And does government counsel agree to that request? Well, Your Honor, I would submit that voting is distinguishable, but if the court finds that voting is controlling, then at that point you're going to have to make a mediation deal. Okay. All right. So... Yes, of course. And so why don't you sit down and let's hear from the government on the bono issue and then you have five minutes left for, you know, further comments if you want, because you can reserve the rest of your time. Thank you, Your Honor. Your Honor, good morning. May it please the Court. Good morning. My name is Arthur Raven. I'm here on behalf of the Respondent. And the reason I would say that bono is distinguishable is for there are several reasons why bono does not apply to this case. One is, unlike bono, who applied during removal proceeding for adjustment of status, this petitioner never made a direct application to the immigration judge. Now, there has been an intervening change in the law, and there was discussion during the hearing about whether or not the immigration judge even had the authority to rule on this. So there was discussion of it, but never a clear application for relief. But didn't the IJA just say, well, I don't have jurisdiction under this to even address it and brush the request aside? Because they... There was no request, Your Honor. Well, how did it come up? It came up because there was discussion about possibly holding the case in the bans before the immigration judge, while a petitioner approached the DHS district counsel's office about expediting the... It wasn't approved yet. And they wanted to see if they could get the DHS office, or at that point IMS, to approve the application. He had an application pending, is that correct? With the DHS people, not in front of the Court. The DHS people? Yes. Never did he ask for... So before he was in removal proceedings, he had an application pending? Is that... That's my understanding, Your Honor. During... It's not clear from the record, but during the initial proceedings, counsel did discuss with the immigration judge that there was an application pending. Now, when exactly it was filed, it was never discussed. But there was something pending. So he... Never adjudicated. I'm sorry. He didn't make a formal request in the hearing. Right. But he informed the immigration judge that there was a pending application. Outside the Court. And did the immigration judge respond in any way, other than to say, I can't deal with that because it's not before me? Well, what he said was, you know, he requested, he inquired of government counsel and petitioner's counsel and said, Would you like to have some time to discuss this off the record? I'll give you time if you want to put the case in the bans. And he did. Well, he gave them an extension, and then they came back and said nothing could be worked out. Because that was... The law was in a somewhat different state at that point. Well, they did not give a reason why they could not work it out with the government. Oh, I'm sorry. I didn't make myself clear. It is factually true that the law was in a somewhat different state at the time. Yes, Your Honor. Yeah, at that point, the regulations were different. Okay. The second issue I would say that Bona is inapplicable is because this petitioner remains on the charge. There are two charges of inadmissibility here. Both were, by the immigration judge, found to be by clear and convincing and equivocal evidence to have been found. The first charge was the false claim of citizenship. And that is on page 53 of the immigration judge's decision. Page 53 of the record, I mean. And what the judge said that he made two findings. One is, during the hearing, the testimony was, did you make a false claim? And he said no. But there was also a statement in evidence that said, what did you say when you came up to the border your third time trying to gain entry? Because during the initial two times that night, he said he was Estonian and he was denied entry. On the third time, he said, in his written statement, he said USA. And then he clarified that during the hearing at several points in the record and said, I just said citizen. So the IJ also made the finding that not only was there an inconsistency and not credible, but also that it is simply insufficient to establish the required burden of proof. He must establish that he is admissible to the United States and not inadmissible as a charge. So regardless of the credibility finding, the judge found that there was substantial record evidence, I would submit to you, that the judge's finding is supported here to find that he did not meet his burden of proof. Again, on that point, Boney is distinguishable. Third point, Boney is distinguishable because there is yet another charge here. And the charge was that he did not have a valid unexpired entry document at the time of entry, which also makes him inadmissible. Now, counsel may argue that that is subject to a waiver. However, if you take a look at the waiver language under 1255K, AUSC 1255K, it talks about a petitioner who has a good faith belief, who has an actual document in his hand that may have expired or something wrong with it. It's defective in some way. And he approaches and tries to enter the United States using it. Now, that exception does not apply to the petitioner because he had no such document at the time of his entry. All he had was a driver's license and a work authorization. So at no time did he have in his hand at the time of his attempted entry a valid or invalid visa or some other type of entry document. Now, should the court find that Boney is, nonetheless, somehow pertinent to the petitioner's case, then at that point we would submit that mediation may be appropriate so that we could explore the issue of remand to see if the board can rule on the issue because of the intervening change in the law. So I was thinking that there's some ambiguity in the BIA's decision and that perhaps we should remand to the BIA to reconsider in light of Bono or something, but it might be more judicially efficient if you two want to think you could work it out rather than remanding to the BIA or if you would want the BIA to apply Bono in the first instance here. I mean, I'm just not – I mean, I'm thinking of the different possibilities, but obviously I always like to see things worked out rather than litigated. Your Honor, I – you know, if the court thinks that that may be a good way to go, I would not be opposed to that. My first inclination is, though, that Boney is distinguishable. And even though you say the board's decision is somewhat unclear, at the very beginning, the board adopted and affirmed the immigration judge's decision. We didn't accept the adverse credibility findings, and one of them embraced the false claim, and then there's the unresponsive line at the end as to the false claim. And it doesn't adopt a finding on that at all. Well, if we're – And how can you affirm and adopt and then say, except on the adverse credibility? Yes, Your Honor, but if you look at the matter of Bourbono, which is what the board relied upon – I know they cited that. Yeah, it permits them to do that. They can adopt only certain aspects of the board's decision and not all of it. And so that's what they did. So what we're arguing here is that regardless of the credibility finding, which was not adopted by the board, the two charges still stand, and that if those two sentences at the end are read together in the context that the board said they recognize the claims that he contends that the immigration judge erred in finding him removable for the false claim of citizenship, they say, yes, he raises that issue, and then they say, we affirm the immigration judge's finding that he failed to meet his burden of establishing his admissibility. Okay. I just found this language I've been looking for as to what happened on the record with respect to the jurisdiction. And what the – I.J. actually said is, so I take it that we did discuss it the last time, and that was the stumbling block for doing an adjustment because I don't have any authority to do adjustments because this is an arriving alien case. And that's the very regulation that was struck down in Bono. That's right. Yeah. But we would say if we don't get to Bono, he does not even get to applying for application because he's inadmissible. And it's his burden to show he's admissible. And there are two grounds he has to overcome before we can get to Bono. The board can make that decision, too. It's not an either-or, is it? I mean, this Court can remand. And one of the issues that the V.I.A. could consider is whether Bono applies. Absolutely. Yes, Your Honor. That could happen. Yes, Your Honor. Subject to the Court's questions. Thank you very much. Thank you, Your Honor. Your Honors, I'd like to speak to a couple of the things that evidently were not clear. I have the original receipt dated August 2nd, 2001, where the petitioner did file through his wife an I-130 and an I-485. The I-485 is the application for adjustment of status. I provided for the record the original for the government to see. And I have the original and I'm not sure if it's more common. Right. Okay. But we can't take evidence on appeal. I understand, Your Honor. And I just want to clarify that point for the record since that was evidently not clarified for the record. And I would note that the I-45 actually was pending at the same time also. Okay. Thank you. So, and also under, I would note under Bono, I understand the government's distinctions. However, Bono really relied upon whether or not the person had been paroled into the United States, having been an arriving alien, has the ability to adjust while they're inside, having been paroled. And I would note that the petitioner was paroled into the United States based upon his asylum application. And that parole was effective May 7th, 2002. So by the time we got to the issues before the immigration judge, the petitioner was in the same position that Bono was. And I would note that in Bono, the petitioner in that case also was an arriving alien, was paroled into the United States. In Bono, the distinction I would see only is that the petitioner in Bono was not placed into removal proceedings until eight years later. But the legal, I don't see any legal distinction there. And as for the government's argument regarding the admissibility, the two basis for an admissibility, one of them was conceded, but I don't see that that makes a distinction in Bono. I don't follow that argument. And the other argument hasn't really been established yet. In other words, we haven't established whether the petitioner has made a false claim of citizenship or not. We would submit that he has not. All right. Thank you, counsel. Do you have any preferences to mediation or remand to the BIA? No, I'll submit whatever the court would consider more appropriate. Okay. Thank you very much, counsel. Would the court like to hear on the merits? Well, we have your briefs and argument. I'm sure we've all read it. I'll submit on that. All right. Thank you. Lepin v. McKayse is submitted.
judges: Wardlaw, Ikuta, Fogel